UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALYCIA DUNN,

                        Case No. No. 19-13133

           Plaintiff,                District Judge Thomas L. Ludington

v.                           Magistrate Judge R. Steven Whalen

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Alycia Dunn brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 19] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

## I.   PROCEDURAL HISTORY

On December 12, 2015, Plaintiff filed applications for DIB and SSI alleging disability as of July 1, 2011 ECF No. 8 (Tr. 496, 498).   Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on March 9, 2018 in Mount Pleasant, Michigan (Tr. 277).   Administrative Law Judge ("ALJ") Sarah Zimmerman presided. Plaintiff, represented by attorney John F. O'Grady, testified (Tr. 286-316), as did Vocational Expert ("VE") Judith Findora (Tr.  316-321).   On September 4, 2018, ALJ Zimmerman determined that Plaintiff was not disabled (Tr. 112-131).

On August 23, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-7).  The Appeals Council acknowledged that additional records had been submitted after the AL J's decision, but found that the new evidence pertaining to Plaintiff's condition prior to the ALJ's decision did not provide a basis for changing the non-disability finding (Tr. 2). The Appeals Council found further that evidence pertaining to Plaintiff's condition after the administrative decision was not relevant to ALJ's determination (Tr. 2).  Plaintiff filed suit in this Court on October 25, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born August 17, 1973, was 45 at the time of the administrative decision (Tr. 131, 496).  She completed two years of college and received a clinical pathology certification (Tr. 557).  She worked previously as a lab technician, phlebotomist, and waitress (Tr. 558). She alleges disability as a result of fibromyalgia, peripheral neuropathy, inflammatory

polyarthritis, a panic disorder, bipolar disorder, depression, anxiety, psoriasis, asthma, herniated discs, and bone spurs of the neck (Tr. 556).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony before the ALJ:

She received a certification from the American Society of Clinical Pathology and worked over 15 years as a lab technician (Tr. 288-289). Her last relevant work was in 2011 when she worked as a waitress at a Bob Evans restaurant (Tr. 289). The serving position required her to work at least 36 hours a week and lift up to 60 pounds (Tr. 289-291). Her earlier work as a lab tech/phlebotomist also required her to lift up to 60 pounds (Tr. 292). The former work also included training incoming staff (Tr. 295-296).

Plaintiff abused alcohol briefly following her 2011 divorce (Tr. 296). She lost her driver's license after a DUI (Tr. 299). She had not used alcohol since May 21, 2015 (Tr. 296). She overcame the alcohol abuse through individual and group counseling (Tr. 297). She relied on her boyfriend, public transportation, her son, neighbors, or friends for transportation (Tr. 299). She would be unable to drive even if her license were restored due to intermittent pain and panic attacks (Tr. 299).

In response to questioning by her attorney, Plaintiff reported hour-long panic attacks on an almost daily basis characterized by heart palpitations, sweating, weakness, and emotional distress (Tr. 300-301). She was unable to work due to her inability to focus during the attacks, adding that she otherwise experienced concentrational problems preventing her

from working (Tr. 301-302).  Her bipolar disorder was characterized by mostly depression due to physical problems (Tr. 302).  She experienced daily crying jags and at the time of hearing no longer attended her children's sporting events due to fear of panic attacks (Tr. 302).  She attended church only sporadically due to panic attacks (Tr. 303).  Due to mental and physical problems, she no longer gardened or exercised (Tr. 303).  She experienced chronic anxiety even when not having a panic attack (Tr. 303-304).  During her working years, she "made . . . enemies" of her coworkers by forcing them to fill her shifts due to unforeseen panic attacks (Tr. 304).  She suffered PTSD with sleep disturbances due to childhood sexual abuse (Tr. 305-307).

Anemia, with the accompanying symptoms of breathless and fatigue, also prevented Plaintiff from working (Tr. 307-308).  She was limited to washing a sink of dishes or unloading a dryer of clothes before requiring a break (Tr. 308).  She also experienced psoriatic arthritis which caused lower back and hip pain; left elbow stiffness; and skin rashes (Tr. 309-310).  At worst, the condition prevented her from standing for even two minutes (Tr. 310).  She was required to elevate her legs at all times while sitting (Tr. 311).  She was unable to lift any significant weight (Tr. 312).  The condition of fibromyalgia was characterized by brain fog, concentrational problems, dizziness, and constant muscle pain (Tr. 312).  The condition "flared" in cold weather (Tr. 313).  She also experienced a herniated cervical disc causing a limited range of neck motion (Tr. 313-314).  She experienced daily headaches and all-day migraine headaches twice a month (Tr. 314).  The

-4-

migraines were characterized by headaches and nausea (Tr. 314).

**B.  Medical Records**

**1.  Records Related to Plaintiff's Treatment**[1]

 May and June, 2011 records by neurosurgeon Mark Jones, M.D. noted Plaintiff's report of radiating arm and right thigh pain (Tr. 652-654).  An MRI of the cervical spine showed a herniation at C5-C6 without nerve root impingement (Tr. 655, 730).  She received a "back to work date" of May 29, 2011 (Tr. 837, 1129).  A neurological examination was normal (Tr. 652, 837). Plaintiff noted that she wanted to avoid cervical spine surgery (Tr. 652, 833). July, 2011 records by Tammy Phillips, M.D. note a history of fibromyalgia, anxiety, and depression (Tr. 767).  She recommended steroid injections, noting that given Plaintiff's "high narcotic risk score," she was "not a great candidate . . . for opiate therapy" (Tr. 767, 771).  In September, 2011, Plaintiff was referred for outpatient substance abuse counseling (Tr. 2349, 2353).  Discharge records note a fair prognosis (Tr. 2351).

---

[1]

Records pertaining to Plaintiff's condition prior to the alleged onset of disability date of July 1, 2011 are included for background purposes only.  Records concerning conditions unrelated to the application for benefits are omitted from discussion. While Plaintiff's arguments for remand pertain exclusively to her psychological limitations, the ALJ's conclusions are drawn from both the mental and physical treating records. Accordingly, all relevant medical evidence has been reviewed.

In June, 2012, Plaintiff was assigned a GAF of 70[2] (Tr. 2339).  October, 2012 EMG testing of the upper extremities was negative for Carpal Tunnel Syndrome ("CTS"), cervical radiculopathy, or other abnormalities (Tr. 688).  Records from the same month by Ma Meihui, M.D. note a "history of fibromyalgia" and a recent neck injury (Tr. 684).  Plaintiff appeared fully oriented and alert with a normal attention span and full strength in all extremities (Tr. 685).  The following month, Plaintiff reported a reduction in anxiety symptoms with Xanax (Tr. 680).  Mental and physical examinations were normal (Tr. 681).  December, 2012 records note the chronic conditions of migraine headaches, anxiety, depression, bipolar disorder, fibromyalgia, and peripheral neuropathy (Tr. 676-677).

Dr. Meihui's January, 2013 records note normal mental and physical examination results (Tr. 671-673).  Dr. Meihui noted that a recent MRI showed a "mild" disc herniation at C5 (Tr. 673).  A chest x-ray performed in response to reports of heart palpitations was unremarkable (Tr. 745).  Ejection fraction testing showed moderate left ventricular diastolic dysfunction (Tr. 1227).  In February, 2013, Plaintiff reported increased symptoms of anxiety and depression resulting from custody disputes with the former husband (Tr. 1044).  She appeared fully oriented with a normal thought process (Tr. 1041).  A March, 2013 examination by Dr. Neihui showed similar results (Tr. 667).  The same month, a cardiac stress test and EKG were unremarkable (Tr. 705, 1225).  ECG testing showed an irregular

---

[2]GAF scores in the range of 61 to 70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34.

heartbeat (Tr. 712, 1230).

June, 2013 mental health records note that Plaintiff was alert and oriented (Tr. 1006). She reported that PTSD symptoms were triggered by interaction with her abusive former husband (Tr. 1003). Plaintiff reported joint pain of the hands, feet, and hip (Tr. 1110). Rheumatoid factor testing was negative (Tr. 1192). In July, 2013, Harris Weaver, M.D. performed a rheumatology consultation, noting fibromyalgia symptoms as well as hand and foot pain (Tr. 755). He noted a diagnosis of psoriasis improved with ultraviolet light and prescribed medication (Tr. 755). October, 2013 mental health records record a GAF of 42 due to major depression, PTSD, alcohol dependence, and economic and occupational problems[3] (Tr. 994). November, 2013 records note that Plaintiff appeared anxious (Tr. 818). Dr. Phillips' December, 2013 records note that Plaintiff was recently in Florida to help her ailing mother (Tr. 810, 979). She exhibited a normal mood and affect with full orientation (Tr. 812). January, 2014 rheumatoid arthritis testing was negative (Tr. 758, 760). November, 2014 records note that Plaintiff was fully independent in self care, household activities, and paying bills (Tr. 961).

May, 2015 mental health records show that Plaintiff was fully oriented with normal judgment and an anxious affect (Tr. 950, 967-968). She reported that she had not used alcohol in three weeks and resolved to stay sober with the help of a church program and

---

[3]

A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability *DSM–IV–TR* at 34.

recovery group (Tr. 944). The following month she reported that she was "doing great" (Tr. 935). Dr. Phillips' records note that Plaintiff experienced withdrawal after stopping the use of Ultram (Tr. 1082, 1334). The same month, Plaintiff sought emergency treatment for neck pain (Tr. 1414). A July, 2015 MRI of the cervical spine showed a small herniation at C4-C5 with a reduction in size of an earlier identified herniation at C5-C6 (Tr. 797, 1075, 1327,1376, 1676). August, 2015 counseling records note Plaintiff's report of engaging in community events, "kids sports practices, camping" and "getting out" (Tr. 919). The same month, she received topical treatment for psoriasis (Tr. 1813). Her mood was noted as "quite anxious" (Tr. 1813). She cancelled a counseling session the following month to attend her son's "first football game" (Tr. 912). She reported that she coped by cleaning and going to her son's football games (Tr. 906). She attributed her loss of her job to the need to care for her now-deceased mother (Tr. 906). The same month, Dr. Phillips noted a neurological surgeon's finding that Plaintiff did "not have a surgical problem" (Tr. 1071, 1323). Treating records note a normal mood and affect (Tr. 1911). In October, 2015, Devyani N. Desai, M.D. noted the diagnoses of major depression (recurrent, severe without psychosis), PTSD, alcohol dependence (in remission), anxiety, bipolar with manic/hypomanic features and the physical conditions of arthiris, psoriasis, myalgia, myositis, thyroid, nicotine, degenerative disc disease (Tr. 282-283, 851, 1878). Dr. Desai found that the combination of mental and physical conditions caused "difficulties with keeping a regular schedule and follow through on tasks" (Tr. 851). Counseling records from the following month note Plaintiff's report of

-8-

body pain (Tr. 893).   Dr. Desai observed   good concentration and memory with full

orientation (Tr. 883).   November, 2015 rheumatoid factor testing by Carlos Diola, M.D. was

within normal ranges (Tr. 1302).   Dr. Diola noted Plaintiff's report that she was diagnosed

many years ago with fibromyalgia and had "tried and failed various treatments" (Tr. 1288).

Plaintiff demonstrated more than 11 fibromyalgia tender points (Tr. 1287).   Dr. Diola noted

a diagnosis of inflammatory polyarthritis (Tr. 1288).   December, 2015 neurological records

by E. Malcolm Field, M.D. note no evidence of actual nerve root involvement (Tr. 856).

Plaintiff appeared "alert, responsive, and oriented" with a normal gait (Tr. 856).

January, 2016 records by Dr. Weaver note Plaintiff's report of pain and stiffness (Tr.

753).   Dr. Weaver noted a 2010 diagnosis of fibromyalgia  (Tr. 753).   He added that he did

not believe she had psoriatic arthritis (Tr. 754).   The same month, an MRI of the brain

showed essentially unremarkable results (Tr. 1244, 1374, 1673, 2113).   Dr. Diola noted a

diagnosis of "psoriatic arthropathy" (Tr. 1277).   Counseling records from the same month

note Plaintiff's report of physical fatigue (Tr. 1534).   She reported that she was able to "get

out and see her son play basketball" (Tr. 1534).   February, 2016 counseling records note

Plaintiff's report of anxiety (Tr. 1503).   A March, 2016 MRI of the brain was unremarkable

(Tr. 193-194).   May, 2016 physical therapy records note that aquatic therapy was

recommended (Tr. 1636). The same month, Plaintiff received trigger point injections to the

neck (Tr. 1630).   A sleep study showed possible restless leg syndrome (Tr. 2123).   June, 2016

counseling records note that Plaintiff had not used alcohol for one year (Tr. 1508).   In July,

2016, Plaintiff was discharged from physical therapy after missing 17 sessions (Tr. 1631). She received an epidural steroid injection (Tr. 1629). The same month, Plaintiff was diagnosed with gallstones and underwent gallbladder removal surgery (Tr. 1401-1407). A musculoskeletal examination was unremarkable (Tr. 1402). An MRI of the lumbar spine was also unremarkable (Tr. 2125). In August, 2016, Plaintiff appeared well-groomed with a normal affect (Tr. 1522). In October, November and December, 2016, Plaintiff received epidural injections after reported severe pain (Tr. 1625-1627). In November, 2016, Plaintiff denied depression and reported that her activities included watching her children "play sports" and attending church (Tr. 1524).

A January, 2017 MRI of the cervical spine showed a herniation at C5-C6 without cord signal abnormalities and mild stenosis at C6-C7 (Tr. 1678). The same month, an EEG showed unremarkable results (Tr. 1682, 1704). March, 2017 physical records show normal judgment and insight with full orientation (Tr. 1832). May, 2017 records by Jennifer Dear, M.D. note that Plaintiff's physical symptoms appeared to be stable (Tr. 1681). Dr. Diola's June, 2017 records note improvement in joint pain, stiffness, and swelling with Humira injections (Tr. 1604). The same month, Plaintiff underwent a hysterectomy (Tr. 1714). Followup records were unremarkable for physical or psychological symptoms (Tr. 1823). In September, 2017, Dr. Diola noted temporary relief from joint pain with Humira (Tr. 2008). Plaintiff's psychological treatment was terminated in October, 2017 due to repeated failure to attend scheduled sessions (Tr. 2005). Psychological intake records from the same month

note full orientation with an anxious mood and poor motivation (Tr. 2394).  Plaintiff denied the current use of psychotropic drugs (Tr. 2396).

January, 2018 records by Faith Fuentes, M.D. note that the condition of "fibromyalgia" was "reasonably stable" (Tr. 1858).  The same month, Dr. Diola noted that "11 fibromyalgia tender points [were] palpated" (Tr. 1885).  A Holter monitor report and echocardiogram showed unremarkable results (Tr. 2196).  Psychological treating records note the stressors of "multiple medical issues" (Tr. 2241, 2409).  Dr. Dear's records from the following month state that Plaintiff's ongoing rashes were exacerbated by prescribed medication (Tr. 2269). The same month, Plaintiff sought emergency treatment for intermittent chest pain (Tr. 2288).  Cardiac testing was unremarkable (Tr. 2293-2302).  In July, 2018, Plaintiff was diagnosed with an iron deficiency (Tr. 227).  She reported confusion, decreased concentration, depression, and sleep disturbances (Tr. 244).  In August, 2018, Plaintiff reported frequent urination (Tr. 169).  She exhibited a normal mood and affect (Tr. 172).  A chest x-ray from the same month was unremarkable (Tr. 224).

## 2.  Non-Treating Records

In May, 2016, Laureen McGuire, M.D. performed a one-time consultative physical examination, noting Plaintiff's report that the condition of psoriasis was "fairly well" controlled with Methotrexate (Tr. 1377).  As to the condition of asthma, Plaintiff reported that she did not use supplemental oxygen and had not sought emergency treatment in the past two years (Tr. 1377).  Plaintiff reported left-sided neuropathy and pain and inflammatory

polyarthritis of the left elbow, noting that the left elbow condition was improved after an injection (Tr. 1378). She reported cervical spine pain and lumbar spine pain radiating to her feet (Tr. 1378). She reported that she could sit for up to 60 minutes, stand for 10, walk up to one block, and lift a gallon of milk (Tr. 1378).

Dr. McGuire observed that Plaintiff was alert and fully oriented (Tr. 1379). She did not appear in distress and demonstrated a normal gait and station with appropriate judgment and insight (Tr. 1379). She exhibited full lower extremity strength but limitations in the left upper extremity (Tr. 1379). She demonstrated a limited range of left ankle motion and tenderness over the left lumbosacral spine and left thigh (Tr. 1379).

The same month, Nathalie Menendes, Psy.D. performed a psychological evaluation of Plaintiff on behalf of the SSA, noting Plaintiff's report of anxiety, bipolar, and panic disorders (Tr. 1385). Plaintiff reported panic attacks triggered by being in public and somatic symptoms (Tr. 1385). She reported that she self-medicated with alcohol until May, 2015 (Tr. 1385). She reported "sometimes" going to her "children's sport events"(Tr. 1386). She was able to clean and do chores and grocery shopping with the help of her boyfriend (Tr. 1386). She was cooperative, fully oriented, and had good contact with reality (Tr. 1386). Dr. Menendes found that Plaintiff would be able to perform "simple and one-step instructions and work procedures" but would "have problems concentrating and persisting through a typical eight-hour day" and "maintaining appropriate behavior. . ." (Tr. 1388).

In June, 2016, Eric Vander Haagen, D.O. performed a non-examining assessment of

Plaintiff's physical abilities on behalf of the SSA, finding that she could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 375). He found that she was limited to frequent (rather than constant) pushing/pulling in the upper left extremity (Tr. 375). He limited her to frequent postural activity except for a limitation to occasional crawling and climbing of ladders, ropes, and scaffolds (Tr. 375). He found the manipulative limitation of frequent reaching in the upper left extremity and the environmental limitations of avoidance of concentrated exposure to extreme cold, hunidity, and airborne hazards (Tr. 375-376).

The same month, George Starrett, Ed.D. performed a non-examining review of the treating and consultative records related to Plaintiff's psychological conditions, finding that she experienced marked limitation in social functioning and moderate limitation in concentration, persistence, or pace (Tr. 355). Citing Dr. Menendes' consultative observations (Tr. 1388), he commented that Plaintiff "will have difficulty maintaining appropriate behavior in that she avoids interactions with others outside her home" (Tr. 349). He found that she could "adjust to changes in her routine and environment" (Tr. 349).

### 3. Records Submitted After the ALJ's September 4, 2018 Determination[4]

---

[4]

Records submitted subsequent to the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). For a remand for review of the newer records under the sixth sentence of 42 U.S.C. § 406(g), the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the

July, 2017 records note an iron deficiency (Tr. 17). In August, 2018, Plaintiff exhibited gait problems and dizziness (Tr. 19). A December, 2018 physical examination was unremarkable (Tr. 49), as was a September 6, 2018 review of systems (Tr. 56). Four days later on September 10, Plaintiff exhibited a mild fever and upper respiratory symptoms (Tr. 340). November, 2018 gastroenterology records note Plaintiff's report of abdominal pain, bloating, gas, and constipation (Tr. 79). Plaintiff exhibited a steady gait, full orientation, and was "engaged and goal oriented" (Tr. 82).

### C. Vocational Testimony

VE classified Plaintiff's past work as exertionally medium to heavy[5] (Tr. 317). ALJ Zimmerman then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

---

"materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). Because Plaintiff does not rely on this evidence in arguing for remand, I need not determine whether good cause exists for the tardy submission or if it is material to the ALJ's decision.

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

[T]he hypothetical individual is able to lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally, is able to stand and/or walk for eight hours and sit for eight hours during a normal eight-hour workday. Such a hypothetical individual is able to frequently as opposed to constantly push and pull and reach with the left upper extremity. The hypothetical individual is able to frequently climb ramps and stairs, can occasionally climb ladders, but can never climb ropes or scaffolds. The hypothetical individual is able to frequently balance . . . and is able to frequently stoop, kneel, and crouch. The hypothetical individual can occasionally crawl.   The hypothetical individual can never be exposed to extreme cold and can occasionally be exposed to atmospheric conditions and humidity, but never in excessive amounts.  The hypothetical individual is unable to work at a production-rate pace such as on an assembly line.  The hypothetical individual may be in the vicinity of, but can have no interaction with the public and is able to carry out simple instructions.  In light of these limitations, is the hypothetical individual able to perform either of the past jobs you described in the case analysis as actually performed or generally performed in the national economy? (Tr. 317-318).

The VE testified that the above limitations would not allow for any of Plaintiff's past relevant work but would allow for the unskilled, exertionally light work of cleaner (800,000 positions in the national economy); administrative support clerk (305,000); and sorter 210,000) (Tr. 318).  She stated that her testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*") and her own professional experience (Tr. 319).

In response to questioning by Plaintiff's attorney, the VE testified that the need to be absent more than one day a month or taking extra work breaks or engaging in visually distracting behavior for more than 20 percent of the workday would be work preclusive (Tr. 320).  The VE testified that the inability to stay on task for more than 30 percent of the workday would be work preclusive (Tr. 321-322).

-15-

### D.   The ALJ's Determination

Citing the medical transcript, ALJ Zimmerman found that Plaintiff experienced the severe impairments of "intermittent obesity, degenerative disc disease of the cervical spine, asthma, inflammatory arthritis, left lateral epicondylitis, affective disorder, PTSD, and alcohol use disorder," but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 115-117).  The ALJ  found that the conditions of psoriasis, GERD, hyperlipidemia, hypertension, tachycardia, minimal sleep disordered breathing, periodic leg movement disorder, mild fatty liver, and minimal to mild degenerative changes of the spine were non-severe (Tr. 116).  She found that the alleged condition of fibromyalgia was not a medically determinable impairment (Tr. 117).  She found a marked limitation in interacting with others and moderate limitation in concentration, persistence, or pace (Tr. 118-119).

ALJ Zimmerman determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> She is able to stand and/or walk for 8 hours and sit for 8 hours during a normal 8-hour workday. She is able to frequently, as opposed to constantly, push and pull and reach with the left upper extremity. She is able to frequently climb ramps and stairs; occasionally climb ladders; and can never climb ropes or scaffolds. She is able to frequently balance . . . stoop, kneel, and crouch; and occasionally crawl. She can never be exposed to extreme cold. She can occasionally be exposed to atmospheric conditions and humidity, but never in excessive amounts. She is unable to work at a production rate pace, such as on an assembly line.  She may be in the vicinity of, but can have no interaction with, the public. She is able to carry out simple instructions. She would have one unscheduled absence every two months (Tr. 120).

-16-

Citing the VE's testimony, the ALJ determined that Plaintiff was unable to perform any of her past relevant work but could work as a cleaner, administrative support clerk, and sorter (Tr. 129-130, 318-319).

In support of the RFC for unskilled, light work, the ALJ cited 2012 imaging and clinical studies showing a normal EMG of the upper extremities; treating records noting the absence of memory or concentrational problems; full muscle strength; and a normal gait (Tr. 121). She cited a July, 2015 MRI showing only a small disc herniation of C4-C5 and a decrease in size of a herniation at C5-C6 (Tr. 122). The ALJ acknowledged that a November, 2015 examination revealed more than 11 fibromyalgia tender points (Tr. 122). She noted an impression of autoimmune rheumatic connective tissue disease but that rheumatoid factor testing was within the normal range (Tr. 122). She cited December, 2015 neurosurgical records showing a normal gait  and that Plaintiff was "alert, responsive, and oriented" (Tr. 122). The ALJ noted that a December, 2016 MRI of the cervical spine did not show nerve root impingement, and that the condition of psoriatic arthritis responded well to medication (Tr. 123).

As to Plaintiff's psychological limitations, the ALJ noted that Plaintiff exhibited clear, goal oriented speech and cooperative attitude at an October, 2013 psychological evaluation (Tr. 124). She noted that Plaintiff's treatment was terminating in May, 2014 for lack of followup treatment (Tr. 124). She cited Dr. Desai's July, 2015 observation of a normal mood and affect and medication reviews showing good concentration and memory (Tr. 124-125).

The ALJ noted that "[d]ue to moderate limitations interacting with others, [Plaintiff] may be in the vicinity of, but can have no interaction with the public (Tr. 125-126). The ALJ observed that Plaintiff's activities included driving, using public transportation, shopping, handling financial matters, preparing meals, cleaning, watching television, caring for pets, caring for her children, and attending sporting events (Tr. 127).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(*en banc*).  Where  substantial evidence

supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

Plaintiff argues that the limitations posed to the VE did not fully account for her moderate deficiencies in concentration, persistence, or pace or marked limitations in interacting with others. *Plaintiff's Brief,* ECF No. 14, PageID.2498 (*citing* Tr. 317-318).

### A.  Concentration, Persistence, or Pace

Plaintiff contends that the hypothetical modifiers posed to the VE did not reflect her full degree of psychological limitation. ECF No. 14, PageID.2498-2499 (*citing Edwards v Barnhart*, 383 F Supp 2d 920, 930 (E.D. Mich. 2005))(Friedman, J.).  She argues, in effect, that due to moderate deficiencies in concentration, persistence, and pace, her inability to stay on task for at least 80 percent of the workday prevents her from performing even unskilled work.  *Id.* at 2499.  She contends that because the hypothetical question did not include all of her relevant limitations, the VE's responding testimony is not supported by substantial evidence.  *Id.*

Plaintiff is correct that job testimony given in response to a hypothetical question constitutes substantial evidence only if it accurately reflects the claimant's physical and mental impairments. *Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). The Sixth Circuit has rejected the proposition that all of the claimant's conditions must be listed

verbatim, but "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] physical and mental impairments." *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004).   However, the ALJ is not required to incorporate unsubstantiated claims in hypothetical question to VE.  *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994).

Here, the ALJ concluded that the treating, consultative, and non-examining findings supported the conclusion that Plaintiff experienced moderate deficiencies in concentration, persistence, or pace (Tr. 118-119).   The question is whether the hypothetical question, stated in relevant part, addressed those deficiencies:

> The hypothetical individual is unable to work at a production-rate pace such as on an assembly line.  The hypothetical individual may be in the vicinity of, but can have no interaction with the public and is able to carry out simple instructions (Tr. 317-318).

The ALJ's choice of hypothetical modifiers adequately address the moderate concentrational deficiencies.   First, the present modifiers - a preclusion on jobs with "production-rate pace such as on an assembly line" and "simple instructions" are more restrictive than the modifiers of "simple, routine, unskilled work" found in *Edwards*.  *Id.* at 930.  *Edwards* held in relevant part that such modifiers did not address the claimant's inability to "meet quotas, stay alert, or work at a consistent pace" *id.*, whereas here, the ALJ included a preclusion on all "production-rate pace" work along with the modifiers "simple" and "unskilled" (Tr. 317-318).  Second, *Edwards* cannot be read to impose a bright line rule for accounting for moderate concentrational deficiencies. Plaintiff's argument that the above

modifiers in this case are automatically insufficient is not supported by Sixth Circuit case law or cases from this District. *See Smith-Johnson v. Commissioner of Social Sec.*, 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Bellman v Commissioner of Social Sec.*, 2019 WL 1521994, at *8 (E.D. Mich. March 20, 2019)(Grand, M.J.), report and recommendation adopted No. 18-10872, 2019 WL 1515258 (ED Mich, April 8, 2019)("Because there is no bright-line rule requiring an ALJ to account for moderate [concentrational] limitations ... in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for" the moderate limitation).

Third, substantial evidence supports the ALJ's finding that Plaintiff did not require more stringent limitations. Records created throughout the relevant period repeatedly note the absence of concentrational difficulties (Tr. 681, 685, 671-673, 812, 883, 1006, 1041, 1522, 1625-1627, 1911). To the extent that the record supports some degree of concentrational limitation (Dr. Desai found in October, 2015 "difficulties with keeping a regular schedule and follow through on tasks" (Tr. 851)) and Dr. Menendes's consultative finding that Plaintiff would "have problems concentrating and persisting through a typical eight-hour day" (Tr. 1388), these findings were adequately addressed by the preclusion of production-rate pace/assembly line work. The VE's testimony that one of her job findings (cleaner) could be self-paced to complete tasks in anywhere between six and eight hours also supports the

conclusion that Plaintiff's "persistence" and "pacing" deficiencies were adequately accounted for in the hypothetical question (Tr. 321).

### B.  Interacting With Others

The gist of Plaintiff's argument is that while the ALJ found marked limitation in interacting with others (Tr. 118-119), the hypothetical question to the VE did not contain a restriction on interacting with either coworkers or supervisors. ECF No. 14, PageID.2501.  A "marked" psychological limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F).

The hypothetical question posed by the ALJ to the VE stated that the hypothetical individual "may be in the vicinity of, but can have no interaction with the public and is able to carry out simple instructions" (Tr. 317-318).  Relying on the consultative and non-examining findings, the ALJ provided the following rationale for his choice of hypothetical limitations and the ultimate RFC:

> The state agency consultant noted a marked limitation in the ability to interact appropriately with the general public and a moderate limitation in the ability to accept instructions and respond appropriately to supervisors []. The consultative examiner noted the claimant avoids interactions with others outside her home, creating difficulty maintaining appropriate behavior (Tr. 118-119 *citing* Tr. 355, 361, 1388).

As a threshold matter, the proscription on interaction with the public but not supervisor/coworker interaction is supported by the record.  The fact that Dr. Starrett found "marked" limitation in the broad category of interacting with others does not imply that all

aspects of Plaintiff's interactions were markedly restricted (Tr. 355).   Dr. Starrett found that while she had marked limitation in dealing with the public, she experienced only *moderate* limitation in accepting instruction and responding to criticism from supervisors and no significant limitation in getting along with coworkers (Tr. 378).   Thus, the hypothetical question to  the VE stating that the hypothetical individual "may be in the vicinity of, but can have no interaction with the public" (Tr. 317-318) is sufficient to address the marked restriction found by Dr. Starrett.

The only remaining question is whether the Step Five findings adequately accounted for *moderate* limitation in the ability to accept instruction and respond appropriately to supervisors (Tr. 118-119, 361).  A moderate limitation is one in which "your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).   *See Makulski v Berryhill*, No. 3:17-CV-128-HBG, 2018 WL 2144152, at *5 (E.D. Tenn, May 9, 2018)(*quoting Cantrell v. McMahon*, 227 Fed.Appx. 321, 322, 2007 WL 557567 at *1 (5th Cir. February 15, 2007) (moderate defined as "'some moderate limitations, but the person can still perform the task satisfactorily.'").

The omission of direct reference to moderate limitation in accepting instruction and responding to criticism from supervisors does not warrant a remand.   First, as discussed above, the hypothetical question does not require inclusion of every one of the claimant's limitations.  *See Webb, supra.*  Second,  none of the three positions cited by the VE (cleaner, administrative  support  clerk,  sorter)  require  significant  interaction  with  supervisors.[6]

---

[6]

*See DOT*: cleaner: § 323.687- 014, 1991 WL 672783 (no "significant"  involvement with people); administrative support clerk: § 222.587-038, 1991 WL 672123 (same); sorter:

*Defendant's Brief,* ECF No. 19, PageID.2532.  Thus, even assuming that ALJ erred by failing to reference the moderate limitation in accepting instruction and criticism, the Step Five finding that Plaintiff could perform a significant number of jobs does not require correction or clarification.

As discussed in detail above, my own review of the evidence also supports the ALJ's choice of hypothetical modifiers.  Treating records created throughout the relevant period show full orientation, a normal attention span, and good interaction with treating and consultative sources (Tr. 172, 685, 812, 883, 950, 967-968, 1006, 1041, 1823,1911).  While Plaintiff faults the ALJ for failing to credit her testimony that she was no longer able to attend her children's sporting events due to anxiety, the ALJ did not err in noting Plaintiff was able to attend the events on multiple occasions during the relevant period (Tr. 127, 906, 912, 919, 1524,1534).  To the extent that she argues that the ALJ "grossly mischaracterized" her allegedly sporadic attendance at those events, the treating records do not support her claim that her attendance was hampered by anxiety or other psychological symptoms.  ECF No. 14, PageID.2502.  Although Plaintiff testified in March, 2018 she was no longer able to attend the events (Tr. 302), the more recent treating records support the conclusion that her psychological condition did not significantly worsen in the months prior to the hearing (Tr. 1823, 1832).

Because the ALJ's decision as to both Plaintiff's physical and psychological abilities was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

---

§ 209.587-034, 1991 WL 671802 (same).

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 19] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*


Date: November 30, 2020                         Steven Whalen                    
                                                R. Steven Whalen
                                                United States Magistrate Judge

-26-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on November 30, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla_____
Case Manager